UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

MICHAEL RUSSO,

                Plaintiff,

      v.

THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE DEPARTMENT, THE METROPOLITAN
TRANSPORTATION AUTHORITY, and the
METROPOLITAN TRANSPORTATION AUTHORITY
POLICE DEPARTMENT,

                Defendants.

------------------------------------------------------------------------ X

**CASE NUMBER:**

**COMPLAINT**

**PLAINTIFF DEMANDS TRIAL BY JURY**

Plaintiff Michael Russo, by his attorney, New York Center for Law and Justice, complains of the Defendants and alleges as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for injunctive relief and money damages against THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT ("NYPD"), the METROPOLITAN TRANSPORTATION AUTHORITY ("MTA"), and the METROPOLITAN TRANSPORTATION AUTHORITY POLICE DEPARTMENT ("MTAPD") (at all times herein mentioned THE CITY OF NEW YORK, the NYPD, the MTA, and the MTAPD shall include their agents, servants and employees) for violations of Plaintiff's rights, including under Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the New York State Human Rights Law and the New York City Human Rights Law. Plaintiff seeks injunctive relief,

compensatory and punitive damages, attorney's fees, and such other and further relief as this court may deem just and proper.

2.     Plaintiff Michael Russo, who is deaf, relies on American Sign Language to communicate with others.  Russo suffered emotional and mental anguish and physical distress as he was denied effective communication with Defendants because of Defendants' failure to provide him with qualified sign language interpreter services.

## PARTIES

3.     Plaintiff Michael Russo is a resident of Westchester County, State of New York. Russo is profoundly deaf and relies on American Sign Language ("ASL") to communicate with others.

4.     The Defendant CITY OF NEW YORK is a municipal corporation within the State of New York.  At all times relevant hereto, the Defendant NEW YORK CITY POLICE DEPARTMENT is an agency of the City of New York.

5.     The Defendant MTA is a public benefit corporation within the State of New York.

6.     The Defendant MTA operates, controls, manages and maintains a police force known as the MTAPD.

7.     At all times relevant hereto, the Defendant MTAPD is a subdivision, constituent department or agency of the MTA.

8.     Defendant MTA provides and maintains Defendant MTAPD as an authority police department and a uniformed authority police force for all MTA owned, occupied, and/or operated facilities, and those of its subsidiary corporations.

## JURISDICTION AND VENUE

9. This action is brought pursuant to Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), the Americans with Disabilities Act of 1990 ("ADA"), the New York State Human Rights Law and the New York City Human Rights Law.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and the aforementioned statutory provisions, inasmuch as federal questions are at issue.  Plaintiff further invokes the pendent jurisdiction of this Court to consider claims arising under New York State law and New York City law.

10. This Court has personal jurisdiction over Defendants because Defendants reside in this district.

11. Venue is proper in this case pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and because Defendants' acts and omissions giving rise to this action occurred in this district.

## FACTS

12. Plaintiff Michael Russo alleges that on March 2, 2016, he was in the men's bathroom at Grand Central Terminal Station.

13. Russo was intending to commute by a Metro North train to his home in Westchester County where Russo's wife was waiting for him to return from New York City.

14. While in the men's bathroom, three police officers approached Russo.

15. One or more police officers were employed by the New York City Police Department.

16. One or more police officers were employed by the MTAPD.

17. Defendants began to speak to Russo, but Plaintiff did not understand what the police officers were communicating.

18. Russo was charged with violations of New York State Penal Code, which charges were later dropped by the New York County District Attorney's Office.

19. At the time that the police officers approached Russo, he could not understand what Defendants were communicating to him.

20. Russo could not read the police officers' lips.

21. Russo tried to express that he is deaf.

22. Russo pointed to his ear several times.

23. Russo tried to vocalize that he is deaf.

24. Defendants put handcuffs on Russo's hands.

25. Russo did not understand why he was placed in handcuffs.

26. Russo was handcuffed behind him, preventing him from communicating with his hands.

27. Russo did not understand why he was placed in custody.

28. Defendants walked Russo to the police station located in Grand Central Terminal Station.

29. The police station, upon information and belief, was operated by the MTA.

30. Russo's wrists hurt from the handcuffs.

31. Russo tried to vocalize that his wrists hurt.

4

32. Russo was brought to a jail cell.

33. Russo was placed in a jail cell by himself at or about 7:45 pm.

34. Defendants took off the handcuffs at this time.

35. Russo tried to get the attention of the police officers while in his jail cell.

36. During the time that Russo was in a jail cell, Defendants passed him, but the police officers did not make an effort to effectively communicate with him or to obtain an interpreter.

37. While in the jail cell, between approximately 8:00 pm and 11:00 pm, Russo gestured for a pen and paper as police officers passed, in order to write that he wanted an American Sign Language interpreter, in order to inquire as to the reasons why he was being detained, and in order to ask that he be permitted to contact his wife, but no police officers provided him with a pen and paper.

38. At or about 11:00 pm, a police officer brought Russo to have his photo taken.

39. At this time, Russo gestured again for a pen and paper to write that he wanted an American Sign Language interpreter, in order to inquire as to the reasons why he was being detained, and in order to ask that he be permitted to contact his wife, but the police officer did not provide him with a pen and paper.

40. The police officer took Russo's photo.

41. Russo was then returned to his jail cell.

42. Later, Russo was taken out of the cell and brought to a room.

43. While in the room, two police officers appeared to gesture to Russo whether he could read lips.

5

44. Russo responded through a gesture that he could not read lips.

45. Russo gestured for a pen and paper to write that he wanted an American Sign Language interpreter, in order to inquire as to the reasons why he was being detained, and in order to ask that he be permitted to contact his wife.

46. One police officer then left the room.

47. The other police officer placed two pages of writing in English in front of Russo and the police officer pointed to Russo to place his initials at various locations on one of the pages.

48. Russo initialed on the written page where the police officer indicated Russo should place his initials.

49. The police officer who had left the room returned with a pen and paper.

50. Russo wrote that he wanted to contact his wife and that he wanted an interpreter.

51. The police officers denied Russo's request and pushed aside the pen and paper.

52. The police officers then directed Russo, through gestures, to read the second written page in English.

53. Russo attempted to read the second written page to the best of his ability in English, but reading was not an effective means for Defendants to communicate the contents of the statement that was in English.

54. After attempting to read the statement, the police officers gestured to Russo that Russo should respond to the statement that he had attempted to read by Plaintiff writing his own statement in English.

55. Russo then wrote on a piece of paper that he did not agree with the content of the statement, to the extent that Russo was able to understand the statement that was in English.

56. Russo then pointed to the paper where he had written that he wanted to contact his wife and he wanted an ASL interpreter.

57. The police officers then spoke between themselves.

58. The police officers gestured that Russo write a statement on another piece of paper and the police officers then provided Russo with another piece of paper and a pen.

59. Russo then wrote a statement in English on another piece of paper provided by the police officers.

60. Russo then wrote on another paper inquiring what would happen next.

61. The police officers wrote on the piece of paper, "$100.00" and gestured what appeared to be the word "maybe."

62. The interrogation by Defendants lasted for approximately one hour.

63. The police officers then accompanied Russo to the front of the station and gave him his coat, his wallet, and his cell phone.

64. Russo then left the police station.

65. Russo was released from custody at or about 1:00 am on March 3, 2016**.**

## SUMMARY OF CRITICAL FACTS

66. Russo was not able to effectively communicate with the police officers.

67. Defendants did not produce an ASL interpreter to achieve effective communication with the police officers.

68. Defendants refused to provide qualified interpreters.

69. Russo could not effectively understand what Defendants were communicating.

70. While in custody, Russo had requested an opportunity to call his wife who had been expecting that he would return home at approximately 8:30 pm.

71. Defendants refused to permit Russo to call his wife.

72. Russo was in emotional distress because he could not communicate with his wife to tell her that he was in custody.

73. Russo was in emotional distress because he could not effectively communicate with Defendants.

74. The aforesaid acts were all in violation of Plaintiff's statutory rights. Plaintiff alleges that the CITY OF NEW YORK, NYPD, MTA and MTAPD are liable for violations of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, The New York State Human Rights Law and the New York City Human Rights Law.

**FIRST CLAIM FOR RELIEF**

**Discrimination on the Basis of a disability in
Violation of the Rehabilitation Act
(29 U.S.C. § 794 *et seq*.)**

75. Plaintiff re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

76. The purpose of the Rehabilitation Act is to ensure that no "qualified individual with a disability in the United States ... shall, solely by reason of his or her disability, be excluded from

the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

77. At all times relevant to this action, the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, was in full force and effect and applied to Defendants' conduct.

78. Defendants receive Federal financial assistance within the meaning of the Rehabilitation Act.  29 U.S.C. § 794(a).

79. The Department of Health and Human Services regulations implementing the Rehabilitation Act clarify the requirements for Federal financial recipients, such as Defendants, stating that "[a] recipient . . . that employs fifteen or more persons shall provide appropriate auxiliary aids to persons with impaired sensory ... or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question." 45 C.F.R § 84.52(d)(1).

80. Appropriate auxiliary aids include, but are not limited to, interpreters.  45 C.F.R. § 84.52(d)(3).

81. Plaintiff is a qualified individual with a disability within the meaning of the Rehabilitation Act.  29 U.S.C. § 705(9)(B); 42 U.S.C. 12102.

82. Defendants failed to comply with the Rehabilitation Act by refusing to provide qualified American Sign Language interpreters to Plaintiff.

83. Defendants, despite consistent and repeated requests by Plaintiff, refused to provide sign language interpreters during Plaintiff's interrogation, arrest, and imprisonment. As such, Plaintiff's ability to communicate with Defendants was significantly restricted; he was excluded

from discussions and decisions relating to his arrest and imprisonment; and he was excluded from communicating with his wife that would have directly benefitted Plaintiff.

84. As a proximate cause of Defendants' violations of Plaintiff's rights under the Rehabilitation Act, Plaintiff has suffered discrimination, unequal treatment, exclusion, violations of his rights under the laws of the United States, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, embarrassment, and unnecessary loss of rights, privileges and property.

85. Defendants' failure to comply with the Rehabilitation Act has resulted in harm to Plaintiff.

86. As a result of Defendants' breaches of law, Plaintiff suffered emotional pain and severe emotional distress and damages in the past, and continues to suffer emotional distress and damages due to Defendants' violations of Rehabilitation Act.

## SECOND CLAIM FOR RELIEF

**Discrimination on the basis of a disability in violation of
Title II of the Americans with Disabilities Act of 1990
(42 U.S.C. § 12131 *et seq*.)**

87. Plaintiff re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

88. On July 12, 1990 Congress enacted the Americans with Disabilities Act ("ADA") "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

89. At all times relevant to this action, the ADA was in full force and effect in the United States and Plaintiff had a right not to be subjected to discrimination on the basis of his disability by Defendants. 42 U.S.C. § 12182.

90. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

91. The ADA defines a public entity as "any State or local government [or] any department, agency, special purpose district, or other instrumentality of a State or States or local government . . . ." 42 U.S.C. § 12131(1)(A), (B).

92. Defendants are public entities within the meaning of 42 U.S.C. § 12131(1) because the CITY OF NEW YORK is a local government. The NYPD is a department of the City of New York. The MTA is a public benefit corporation. The MTAPD is a department of the MTA.

93. The ADA defines a disability as "a physical . . . impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Major life activities include hearing and speaking. 42 U.S.C. § 12102(2)(A).

94. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2).

95. Defendants subjected Plaintiff to discrimination based upon his disability in violation of Plaintiff's rights under Title II of the ADA. Defendants repeatedly failed to provide Plaintiff with qualified interpreters on numerous occasions while he was under arrest and

11

imprisoned. Defendants failed to ensure that Plaintiff was not excluded, denied services, or otherwise treated differently than other individuals as required by 42 U.S.C. § 12132.

96. Defendants discriminated against Plaintiff when they failed to provide Plaintiff with qualified sign language interpreters at the time he was questioned, arrested, and throughout his imprisonment.

97. Defendants treated Plaintiff differently than hearing individuals by not providing the necessary American Sign Language interpreter services that would have enabled Plaintiff to effectively communicate with police officers.

98. Defendants' violations of Plaintiff's rights under Title II of the ADA have proximately caused Plaintiff to suffer discrimination, unequal treatment, exclusion, violations of his rights under the laws of the United States, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, embarrassment, and unnecessary loss of rights, privileges, and property.

99. As a result of Defendants' actions, omissions and breaches of law, Plaintiff demands attorney's fees and injunctive relief, as outlined below.

### THIRD CLAIM FOR RELIEF

**New York City Human Rights Law, N.Y.C. ADMIN. CODE § 8-101 *et seq*.**

100. Plaintiff re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

101. Plaintiff has a "disability" as defined in New York City Human Rights Law, Sec. 8-102 (16)(a), in that he is deaf.

102. The police precinct is a "place(s) or provider(s) of public accommodation" within the meaning of New York City Human Rights Law, Sec. 8-102 (9). These "governmental bodies or agencies" are also "covered entit[ies]," in that they are prohibited from engaging in unlawful discriminatory practices. New York City Human Rights Law § 8–102 (1), (17).

103. Providing a sign language interpreter in order to allow deaf individuals to communicate with governmental bodies and NYPD and MTAPD officers when such individuals are questioned, arrested, or imprisoned is a "reasonable accommodation" within the meaning of New York City Human Rights Law, Sec. 8-102 (18).

104. Defendants discriminated against Plaintiff on the basis of his disability and failed to make a "reasonable accommodation" for Plaintiff's disability when they failed to provide Plaintiff with a qualified sign language interpreter throughout the time during which he was arrested, and throughout the time that he was imprisoned. New York City Human Rights Law, Sec. 8-107 (4), (15).

105. As a result of Defendants' actions in violation of New York City Human Rights Law, Plaintiff was damaged and injured.

106. Plaintiff was caused to suffer as a consequence of Defendants continued failure to provide reasonable accommodations such as qualified interpreters. Defendants have wantonly, recklessly and maliciously acted with disregard for the rights and well-being of Plaintiff and Plaintiff is thereby entitled to punitive damages.

107. By reason of the foregoing, as a result of Defendants' breaches of law, Plaintiff suffered emotional pain and severe emotional distress and damages in the past, and continues to

suffer emotional distress and damages due to Defendants' violations of the New York City Human Rights Law.

108.    Plaintiff also requests punitive damages, attorney's fees, as well as injunctive relief.

## FOURTH CLAIM FOR RELIEF

**New York State Human Rights Law, N.Y. EXEC. LAW § 292**

109.    Plaintiff re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

110.    Plaintiff has a "disability" as defined in New York State Human Rights Law Section 292 (21), in that he is deaf.

111.    The NYPD's and MTA's precinct are "place(s) of public accommodation" within the meaning of New York State Human Rights Law Section 292 (11), as it is a "place" plainly "included in the meaning of such terms." NY State Human Rights Law Section 292 (9).

112.    Defendants THE CITY OF NEW YORK, NYPD, MTA, and MTAPD are the "proprietor, manager, agent or employee" of the police precinct. New York State Human Rights Law § 296 (2)(a).

113.    Defendants discriminated against Plaintiff based on his disability by refusing, withholding and denying to him "the accommodations, advantages, facilities or privileges" afforded to hearing and other non-disabled individuals by failing to provide Plaintiff with qualified sign language interpreters "to the effect that . . . the accommodations, advantages, facilities and privileges" afforded to hearing individuals who are arrested, questioned and imprisoned by

14

Defendants were "withheld [from and] denied" to Plaintiff. New York State Human Rights Law § 296 (2)(a).

114. Defendants discriminated against Plaintiff based on his disability and failed to make "reasonable accommodations" for his disability. New York State Human Rights Law § 292 (21).

115. Defendants' failure to comply with New York State Human Rights Law has resulted in harm to Plaintiff. This harm will continue unless and until Defendants are ordered by this Court to make reasonable modifications to their policies, practices, and procedures. As a result of Defendants' breaches of law, Plaintiff suffered emotional pain and severe emotional distress and damages in the past, and continues to suffer emotional distress and damages due to Defendants' violations of the New York State Human Rights Law.

116. Plaintiff also requests punitive damages, attorney's fees and injunctive relief.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands the following relief, jointly and severally, against all Defendants:

(1) On the FIRST CLAIM FOR RELIEF, against Defendants, punitive, and compensatory damages, along with attorney's fees;

(2) On the SECOND CLAIM FOR RELIEF, against Defendants, injunctive relief as outlined below, along with attorney's fees;

(3) On the THIRD CLAIM FOR RELIEF, against Defendants, injunctive, punitive, and compensatory damages, along with attorney's fees;

(4)   On the FOURTH CLAIM FOR RELIEF, against Defendants, injunctive, punitive, and compensatory damages, along with attorney's fees;

(5)   Entry of such declaratory and injunctive relief under Title II of the ADA, Section 504 of the Rehabilitation Act, the New York State Human Rights Law and New York City Human Rights Law, against Defendants and in favor of Plaintiff to remedy past violations of the laws of the United States and New York State and New York City and to prevent future violations of the same, including making available to deaf and hard of hearing individuals:

- qualified interpreters;
- auxiliary aids and services;
- displays in each police precinct and jail indicating availability of ASL interpreters;
- changes in policy and procedure to ensure compliance with the law; and
- implementation of means of monitoring and reporting non-compliance with the Court's instructions; and

(6)   For such other and further relief as this Court deems just and proper, together with costs, disbursements, and reasonable attorney's fees.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial by jury as to each and every claim for which he is so entitled.

Dated:  December 14, 2017
       New York, New York

                        Respectfully submitted,

                        By:

                          /s/Bruce J. Gitlin
                           Bruce J. Gitlin

                        NEW YORK CENTER FOR LAW AND
                        JUSTICE, INC.
                        2095 Broadway
                        Suite 411
                        New York, NY 10023
                        T: (212) 757-2800
                        F: (212) 757-7042
                        bgitlin@lawjusticecenter.org
                        *Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- X

MICHAEL RUSSO,
:

                Plaintiff,
:

      **v.**

THE CITY OF NEW YORK, THE NEW YORK          :
CITY POLICE DEPARTMENT, THE METROPOLITAN
TRANSPORATION AUTHORITY, and THE
METROPOLITAN TRANSPORTATION AUTHORITY    :
POLICE DEPARTMENT,

:

                Defendants.

------------------------------------------------------------------------- X

---

# COMPLAINT

---

NEW YORK CENTER FOR LAW AND JUSTICE
Attorneys for Plaintiff
Office and P.O. Address
2095 Broadway
Suite 411
New York, NY 10023
(212) 757-2800